**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-03077-CMA-CBS

VICTOR ANDERSON, and
WILLIAM H. MOORER,

      Plaintiffs,

v.

BUILDING RESTORATION SPECIALTIES, INC.,

      Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. # 23.) In this case, Plaintiffs Victor Anderson ("Anderson") and William H. Moorer ("Moorer") bring suit against their former employer, Building Restoration Specialties, Inc. ("Defendant" or "BRS"). Plaintiffs allege that Defendant discriminated against them on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981. Jurisdiction is proper under 28 U.S.C. § 1331. For the following reasons, Defendant's motion is granted.

## I. BACKGROUND

The following facts are undisputed, unless otherwise noted. The Court will elaborate, as needed, in its analysis section.

Moorer and Anderson are African-American males. In June 2008, Moorer was hired by BRS as a bricklayer. (Doc. ## 23, ¶ 1.) Moorer was later promoted to the position of foreman at the Denver Water Project (the "Project"). (*Id.*, ¶ 5.) During his tenure as foreman, Moorer was the only foreman on the Project. (*Id.*, ¶ 6.) In August 2008, Anderson was hired by BRS as a laborer. (*Id.*, ¶ 41.) At all relevant times, Moorer and Anderson were at-will employees of BRS. (*Id.*, ¶¶ 2, 42.)

Moorer's job duties as foreman on the Project included supervising the work crew, ensuring the work crew's safety, constructing masonry prisms,[1] managing the project on site for BRS, ensuring the crew did not spill grout, and acting as point of contact on behalf of BRS for the general contractor. (*Id.*, ¶ 7.) Additionally, Moorer coordinated job tasks and site management directly with the general contractor. (*Id.*, ¶ 8.)

As foreman, Moorer received two written safety violations from the general contractor.[2] (*Id.*, ¶ 12.) The first written safety violation was given to Moorer on September 26, 2008, and the second safety violation was given to Moorer on October 24, 2008, a week before his termination. (*Id.*, ¶ 13.) Moorer testified at his deposition that it was his responsibility to ensure that such safety violations did not occur. (Doc. # 23-1 at 46.) Additionally, under Moorer's supervision, BRS crew members crookedly

---

[1] A masonry prism is a sample of the mortar used in strength tests to show that the mortar is strong enough to be used in the construction of the building. (Doc. # 23 at 13.)

[2] Moorer asserts that the safety violations were committed by various BRS crew members while he was foreman.

built a wall that later needed to be torn down, and grout was repetitively spilled which required excessive cleaning. (Doc. # 23, ¶¶ 16-17.) The general contractor complained about both of these problems. (*Id.*, ¶ 18.)

Before using a new product at the Project, BRS was required to receive permission from the general contractor. (*Id.*, ¶ 22.) On October 29, 2008, BRS provided Moorer with an unapproved product to test on a portion of the building to determine if the product adequately covered grout spots and made the building look presentable. (*Id.*, ¶ 20.) The parties dispute whether Moorer merely tested the unapproved product on a small portion of the building or whether he used the product on the entire building. (*Id.*, ¶ 21.) At some point, Moorer left the Project to pick up more of the unapproved product. (Doc. # 23-1 at 87, 90.) While Moorer was away from the Project, the general contractor noticed that the unapproved product had been used and complained to Mr. Baker ("Baker"), who was Moorer's supervisor. (Doc. # 23, ¶ 24.)

After Moorer returned to the Project, Anderson left for lunch. (Doc. # 23-1 at 94-95.) Shortly thereafter, Baker arrived at the Project and asked Moorer: "Why did your dumb black ass let the [general contractor] see the [unapproved product]?"[3] (Doc. # 23, ¶ 26.) Baker also inquired about Anderson's whereabouts and Moorer informed Baker that Anderson had left for lunch. (*Id.*, ¶ 28.) At some point, the general contractor told Baker to stop production on the Project and wait for approval before continuing to use

---

[3] Although Baker denies making this statement, it is not contested for the purposes of the instant motion. (Doc. # 23 at 5.)

the unapproved product. (*Id.*, ¶ 25.) Moorer called Anderson to tell him that the Project was being shut down and that he should not return to work. (Doc. # 23-5 at 25.) Believing that Moorer or Baker would contact him when work on the Project resumed, Anderson did not inform BRS that he was not returning to work. (Doc. # 23, ¶ 45.)

On October 30, 2008, Moorer and Anderson each went to the BRS office separately. Moorer arrived first and was told by Baker that he was fired. (*Id.*, ¶ 32.) Later that day, when Anderson arrived at the office, Baker told him that he was fired for abandoning his job. (*Id.*, ¶ 49.) However, the president of BRS, Ms. Maas ("Maas"), attests that it was her decision to fire both employees. (Doc. # 23-2, ¶¶ 10-11, 13-14.)

Plaintiffs filed their Complaint on November 23, 2011. (Doc. # 1.) Defendant filed the instant Motion for Summary Judgment on November 28, 2012. (Doc. # 23.) Plaintiff responded on January 8, 2013, and Defendant replied on January 22, 2013. (Doc. ## 30, 31.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential

to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670-71. In attempting to meet that standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and

inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. ANALYSIS

In this case, Plaintiffs allege that Defendant racially discriminated against them in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. and 42 U.S.C. § 1981.[4] Because Plaintiffs attempt to prove their claim through circumstantial evidence, the Court applies the familiar *McDonnell Douglas* burden-shifting analysis to Plaintiffs' claim. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

Under the *McDonnell Douglas* approach, Plaintiffs must first establish a *prima facie* case of racial discrimination by the Defendant. *Id.* If Plaintiffs can do so, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. *Khalik*, 671 F.3d at 1192. If Defendant articulates such a reason, the burden shifts back to Plaintiffs to demonstrate that Defendant's proffered reason is pretextual. *Id.*

To establish a *prima facie* case alleging termination on the basis of race, Plaintiffs must individually demonstrate that: "(1) they were members of a protected class; (2) they were qualified and satisfactorily performing their jobs; and, (3) they were terminated under circumstances giving rise to an inference of discrimination." *Salquero*

---

[4] Because the standards for proving a violation of Title VII or 42 U.S.C. § 1981 are the same, *see Crowe v. ADT Sec. Servs., Inc.,* 649 F.3d 1189, 1194 (10th Cir.2011), the Court's analysis applies equally to both claims.

*v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004).  "Plaintiffs can establish evidence of the third prong in various ways, such as 'actions or remarks made by decisionmakers,' 'preferential treatment given to employees outside the protected class,' or 'more generally, upon the timing or sequence of events leading to [P]lantiff's termination.'"  *Barlow v. C.R. England, Inc.*, --- F.3d ---, 2012 WL 6685467, at *6 (10th Cir. 2012) (quoting *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005)).

### A.  MOORER'S CLAIM OF DISCRIMINATION

The Court first addresses whether Moorer has established a *prima facie* case of discrimination.  Defendant argues that Moorer cannot establish that he was performing his work satisfactorily because of Moorer's many work performance issues, including that he failed to adequately supervise his work crew, failed to ensure his work crew's safety, failed to construct masonry prisms correctly, failed to ensure that grout was not spilled, failed to follow the proper protocol when he used an unapproved product on the building, and frequently showed up late to work.  Although Moorer disputes that he constructed masonry prisons incorrectly and that he failed to follow the proper protocol with respect to using the unapproved product, Moorer admits that members of his crew committed safety violations, that he was occasionally tardy, that he and his crew were having trouble placing the grout without spilling it, and that one crew member erected a crooked wall.  (Doc. # 30, ¶ 38.)  Further, Moorer testified at his deposition that he

believed he could have been fired for any of these incidents.[5] (*Id.*) Given these significant and undisputed work performance issues, the Court finds that Moorer has not demonstrated that he was performing his job satisfactorily at the time he was terminated. *See Denison v. Swaco Gelograph Co.*, 941 F.2d 1416, 1421 (10th Cir. 1991) (plaintiff must show that his "performance was of sufficient quality to merit continued employment, thereby raising an inference that some other factor was involved in the decision to discharge him."). Thus, Moorer has failed to establish a *prima facie* case of discrimination and summary judgment is appropriate on his racial discrimination claim.

Even assuming *arguendo* that Moorer was able to establish a *prima facie* case of discrimination, Moorer is unable to show that Defendant's proffered reasons for his termination were pretextual. A showing of pretext may be based on "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's claimed legitimate, non-discriminatory reason such that a rational trier of fact could find the reason unworthy of belief." *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1143 (10th Cir. 2009).

Moorer first contends that the termination decision was pretextual because similarly situated employees were given preferential treatment. However, Moorer has

---

[5] The Tenth Circuit has held that a plaintiff can rely on his own testimony that his work was satisfactory in order to make out a prima facie case of discrimination. *MacDonald v. E. Wy. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991). Here, Moorer admits that his work was not satisfactory by his concession that he could have been fired for any of the incidents cited by Defendant as their reasons for terminating Moorer.

not presented evidence that any other employee was subject to the same standards governing performance evaluation and discipline. *See Smith v. Potter*, 252 F. App'x at 224, 228 (10th Cir. 2007) ("Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."). Moreover, Moorer has not provided any evidence that any other employee committed conduct of comparable seriousness to the performance deficiencies discussed above. *See id.* Thus, Moorer has failed to identify any other similarly situated employee who was given preferential treatment.

Moorer also points to the derogatory comment made by Baker on October 29, 2008 as evidence of pretext. For purposes of the instant motion, it is not contested that Baker asked Moorer: "Why did your dumb black ass let the [general contractor] see the [unapproved product]?" In order to rely on a discriminatory statement as evidence of pretext, a plaintiff must show that the statement was made by a decision maker and that there was a nexus between the discriminatory statement and the decision to terminate. *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998). Although it is undisputed that Baker communicated the termination decision to Moorer, Maas attests that it was her decision to fire him. (Doc. # 23-2, ¶¶ 13-14.) Maas further attests that she had no knowledge of Baker's statement when she made her decision to terminate Moorer. (*Id.*, ¶ 12.) Thus, Plaintiffs have not shown that Baker's discriminatory statement came from a decision maker. *See Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000) (a stray remark by an individual not involved in

the decision to terminate plaintiff's employment is insufficient to show pretext.) Moreover, even if there was evidence that Baker was a decision maker, his isolated comment is insufficient evidence of discriminatory animus.  *See Foster v. Ruhrpumpen, Inc.*, 166 F. App'x 389, 391-92 (10th Cir. 2006) (holding that discriminatory remark was too isolated and ambiguous to demonstrate any nexus between it and subsequent hiring decision).  Although Baker's remark was undoubtedly derogatory, it was also isolated in the sense that it was made only once,[6] and stray in the sense that Moorer has not shown a nexus between the remark and the decision to terminate him.  *See id.* at 392.

## B.     ANDERSON'S CLAIM OF DISCRIMINATION

Turning to Anderson's claim of racial discrimination by BRS, the Court finds that Anderson also cannot establish the second element of a *prima facie* case of discrimination because he was not performing his job satisfactorily when he left work on October 29, 2008 and failed to return.[7]  Moreover, Anderson has not provided any evidence showing that Defendant's reason for firing him – job abandonment – was pretextual.  Thus, the Court finds that summary judgment is appropriate on Anderson's claim of racial discrimination.

---

[6] At his deposition, Moorer testified that this one racial comment was the only evidence he had that would indicate that BRS discriminated against him.

[7] Anderson testified at his deposition that he did not inform BRS that he was not returning to work because Moorer had told him he would be contacted when he was needed.  (Doc. # 32-5 at 33, 35, 36.)  Whether or not Anderson believed that he needed to return to work is irrelevant because there is no evidence that BRS lacked a good faith belief that Anderson had abandoned his job.  *See Rivera v. City & County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) (holding that the relevant inquiry is "is whether the employer's stated reasons were held in good faith at the time of the discharge, even if they later prove to be untrue.").

## IV. **CONCLUSION**

Based on the foregoing, it is ORDERED that Defendant's Motion for Summary Judgment (Doc. # 23) is GRANTED and this case is DISMISSED WITH PREJUDICE.

It is FURTHER ORDERED that the Final Trial Preparation Conference set for February 15, 2013 and the three-day Jury Trial set to commence on March 4, 2013 are VACATED.

DATED:  February __04__, 2013

BY THE COURT:

*/s/ Christine M. Arguello*

_____
CHRISTINE M. ARGUELLO
United States District Judge